BOONE COUNTY BANK v. EOFF.

Opinion delivered April 8, 1899.

SHERIFF—LIABILITY ON OFFICIAL BOND.—Where a sheriff sold attached property, and took a note for the purchase money payable to a bank which was one of the attaching creditors, and the bank, after collecting the note, loaned the money, without the sheriff's authority, to the sheriff's deputy, who executed his individual note secured by mortgage, the bank cannot hold the sheriff liable on his official bond for its pro rata of the money so collected and loaned. (Page 324.)

Appeal from Boone Circuit Court.

BRICE B. HUDGINS, Judge.

*W. F. Pace*, for appellants.

Appellee (the sheriff) had no right to impeach appellant's judgment. Drake, Att. § 304; 1 Black, Judg. §§ 160, 246, 268, 269; 2 *id*. § 604; 54 Ark. 525. The return of the sheriff is conclusive as to the method by which the sheriff came into possession of the goods. 14 Ark. 11; 4 Ark. 185. It was the duty of the sheriff to hold the fund derived from the sale of the goods. Sand. & H. Dig. § 350. The court erred in giving instruction No. 5. The order apportioning the funds cannot be collaterally impeached. 1 Black, Judg. §§ 1, 246. Proof of an essential fact, which a party has neglected to allege, is incompetent, and cannot be treated as amending the pleading. 42 Ark. 514; 40 Ark. 352; 54 Ark. 304; 43 Ark. 525. There is a total each of evidence on which to base instruction No. 5. Sand. & H. Dig. § 5766; Gr. Pl. & Pr. § 477; 41 Ark. 394; 59 Ark. 170.

*J. W. Story* and *W. S. & F. L. McCain*, for appellees.

There was no error in the court's instructions. Appellant was not entitled to a new trial on the ground of surprise. 26 Ark. 496; 55 Ark. 567; 57 Ark. 60; 91 Ind. 44; 29 Ark. 225.

BUNN, C. J. This is a suit by the Boone County Bank against the sheriff of Boone county and the sureties on his

official bond for money collected by him in an attachment pro-
ceeding against one Hulen, and which said sheriff failed and
refused to pay over to said bank, the plaintiff in said attach-
ment proceeding.   There was a demurrer to each of four of
the paragraphs of the answer of the sureties, but the same was
overruled as to each, and plaintiff reserved its exceptions, and
trial by a jury was had, which resulted in a verdict for the de-
fendants.   Motion for a new trial on eighteen several grounds
was made, and overruled, and plaintiff excepted, tendered its
bill of exceptions in due time, and, the same being certified,
took its appeal to this court.

The facts in this case are:   D. A. Eoff, one of the defend-
ants, and the principal obligor on said bond, held the office of
sheriff for the term beginning October 30, 1892, and ending
October 30, 1894, and at the September election in 1894 was
elected to succeed himself, that is, for the term beginning Octo-
ber 30, 1894, and ending October 30, 1896, for the new term,
with his co-defendants as his sureties.

On the 11th day of October, 1894, while filling the former
term, and in obedience to these several writs of attachment
issued in vacation, and before judgment, against the property of
said Hulen, at the instance and in favor of said bank, L. Kirly
and R. P. Bryant, respectively, he sold said property, and one
A. S. Johnson became the purchaser thereof for the sum of
$1,944.85, which sum, we infer, was to be applied *pro rata*
towards the satisfaction of the judgments the three plaintiffs
aforesaid should thereafter obtain in said three suits.

The sheriff, the said D. A. Eoff, had been transacting
most, if not all, of his financial business with said bank, of
which R. F. King was president and apparently the active
manager, and he was present at the sale (which was some miles
distant from Harrison, the county seat and domicile of the
bank), looking after the bank's interest in this matter; and when
the sale was over, he and Johnson, at the suggestion of the
sheriff, proceeded to the office of the bank at Harrison to pre-
pare such papers as were necessary to consummate the sale and
purchase, as the same had been made on a credit of three
months from the date of sale.   It seems that the sheriff, indi-
vidually, owed A. S. Johnson about two hundred dollars or

more, and this, at Johnson's request, was allowed by King as a credit on the purchase price to be paid by Johnson. It was then arranged between King and Johnson that Johnson should give his note to the bank for $789.53 and two separate notes payable to the sheriff covering the balance for the benefit of the other plaintiffs in attachment, costs, etc. We infer that the note to the bank was based on the estimated amount that would be coming to the bank from its share of the proceeds of the property sold after payment of costs, for we find that on the 11th of November, 1896, final judgment was rendered in the attachment suits, and the judgment in favor of the bank at that time was $919.76.

On the 5th of August, 1895, Johnson paid off these notes at the bank, and to the bank, and the gross amount of the three, the sum of $1,698.45, which appears to have been the balance of the $1,944.85 after deducting $229.05, the amount owing by the sheriff to Johnson, as stated, together with interest on said balance until the date of the payment of said notes, to-wit, the 5th of August, 1895. This balance and interest, amounting to $1,698.45, was on said 5th day of August, 1895, deposited in said bank to the credit of the sheriff, D. A. Eoff, in said transaction involving said attachment suits.

Before the sale of the attached property, and after the commencement of the attachment suits, a suit had been instituted against the sheriff for this property by other creditors of Hulen, and by reason of this latter suit the order of sale before judgment was made.

On or before the 14th of August, 1895, B. B. Eoff, a brother of D. A. Eoff, the sheriff, and his deputy at the time, applied to R. F. King, the president of the bank, to get the money from the Hulen sale then in the bank as stated. King refused to let him have it, although, as he testifies, he "had the right and authority to collect the money;" meaning, doubtless, that he had the authority to draw it out of the bank. Being refused the money, B. B. Eoff says, he then desired to borrow the money on his own private account, and so informed King, who responded that, while the bank was not lending, yet that if he (Eoff) would give him (King) for the bank security, he would lend him (Eoff) the Hulen attachment money. B. B.

Eoff then gave his individual note to the bank for $1,340.27. This note and mortgage were dated 1st of July, 1895, but the mortgage was not acknowledged until the 16th of August, 1895; and B. B. Eoff testifies that suit to foreclose this mortgage was pending when he testified, and that he had then confessed judgment in that proceeding, and had offered to make the bank a deed to the mortgaged premises.

The testimony of R. F. King shows that the money, the $1,340.27 thus borrowed by B. B. Eoff, was paid to him by the cashing of two several checks drawn by him in the name of his brother, D. A. Eoff, the sheriff, the one dated August 14, 1895, for $500, and the other dated August 17, 1895, for $1,198.45.

The other two attachment creditors of Hulen appear to have been settled with. At all events, neither is complaining here, and we presume they have been paid their *pro rata* shares of the proceeds of the sale of the attached property.

The plaintiff bank in this action sues the sheriff on his official bond for its *pro rata* share of said proceeds only, and the question before us is, is the sheriff bound for the same on his bond?—which, of course, means, are the defendant sureties bound to the bank for the same? If this were a suit by the other two attaching creditors against the sheriff for his failure to pay over their shares of said proceeds of sale, we can readily see that the sheriff and his bondsmen could only defend by showing that the money had been paid to the plaintiffs, if the sheriff had in fact collected it, or should have done so. But this suit is against the sheriff and bondsmen by the bank, and the sole defense is that the defendants are not bound by reason of the connection the bank has had with these funds, and its action in relation thereto. As before stated, judgments were finally rendered in the attachment suits on the 11th of November, 1896, and at the same time the trial court apportioned the said funds, giving the bank as its share the sum of $808.46, and for this sum it sues in this action.

If B. B. Eoff borrowed the $1,340.27 from the bank itself, and as of its own money, then the proceeds of the attachment sale of Hulen's property is still in the bank; and of course this suit is without foundation upon which to rest, for in that case the bank would have to pay itself out of the funds in its hands.

If, however, as the bank contends, the Hulen funds were drawn out by D. A. Eoff, the sheriff, by and through his authorized deputy, before final judgment and distribution of the fund, then the question grows more complicated. In that case (and we will assume it to be the case) we are led to inquire the more particularly as to the relation of the bank to the sheriff, and of both to the fund in bank, and to it subsequently. So far as that part of the Hulen fund now sued for is concerned, the bank is entitled to it, and was on the 5th day of August, 1895, although at that time it had to await the final order of the court to come fully into the enjoyment of it. Without the advice or consent of the sheriff, on the 5th of August, 1895, no doubt in anticipation of its rights under the final orders of the court, it loaned this money to B. B. Eoff individually, and took his individual note therefor, and his real estate mortgage to secure the same. The sheriff disclaims all knowledge of, or participation in, this transaction. But it is contended that because of the fact that B. B. Eoff drew out the amount borrowed on his note and mortgaged in the name of his principal, therefore the money he received belonged to the latter as sheriff. That might be true or not, according to circumstances. If the sheriff really had such a fund in bank subject to his disposition, it was so by reason of the same being placed to his credit on the 5th of August, 1895, when paid into the bank by Johnson. But that placing of the amount to the credit of D. A. Eoff was at the time purely an arbitrary matter in the bank; for that part of the fund was the proceeds of a note from Johnson to the bank, made on the day of the attachment sale, and, we infer, by the consent of the sheriff. It is true that at that time the court had not rendered judgment in the attachment suits, and, of course, had made no order of distribution of the fund between the plaintiff in the attachments; but the amount coming to the bank had been estimated by the bank, and, in this view of it, it took a separate note from Johnson for the amount coming to it, and the amount, as between the bank and the sheriff, was considered as paid to the bank, especially since it had agreed with Johnson to extend the time of payment beyond the three months, and did so extend it to him.

Again, if this part of the fund was in bank, and belonged to D. A. Eoff, the sheriff, at the time B. B. Eoff, the duly authorized deputy, applied to draw it out for the sheriff, the bank had no legal right to refuse to permit him to do so, unless, under some rule of the banking law, the bank has the right to appropriate a depositor's fund or balance in bank on his general account showing a balance to the bank. That condition is not presented here, and perhaps could not be, without defeating the case as against the bondsmen.

But, assuming, for the sake of argument, that this part of the fund belonged to the sheriff when B. B. Eoff borrowed it out of the bank, did not the bank, as the agent of the sheriff, assume to loan it without the direct authority of the sheriff, and should not the bank be held to account for collection of the amount loaned to B. B. Eoff? This fund was in fact the bank's own fund, when it loaned it out, subject only to the final judgment of the trial court, and that judgment was rendered before the institution of this suit. So that the contention of the bank now really is that the sureties on the sheriff's bond should be made to pay it back the money which it loaned out. If that be true, what is to become of the money due on B. B. Eoff's note, when collected? For that is the same money now sued for, according to the bank's contention. In this view of the case, there is no substantial error in the instructions of the court, nor in refusing instructions asked.

The demurrer to the first, second, third and fourth paragraphs of the answer was properly overruled, because each of these paragraphs was a specific denial of facts alleged in the complaint, and if the matter therein stated was not properly stated with sufficient explicitness or certainty, as seems to be the real ground of objection, a motion to make more explicit and certain should have been made, instead of the interposition of the demurrer.

Affirmed.